## STATE OF CONNECTICUT *v.* VICTOR RODRIGUEZ (4374)

BORDEN, DALY and BIELUCH, Js.

Argued January 7—decision released March 17, 1987

*Kimball Haines Hunt,* with whom, on the brief, was *John Serrano,* legal intern, for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom, on the brief, were *Linda Yoder,* special attorney, and *James Thomas,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1),[1] and assault in the first degree in violation of General

---

[1] General Statutes § 53a-101 provides in pertinent part: "(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

Statutes § 53a-59 (a) (1).[2] The defendant claims that the trial court erred (1) in denying his motion in limine thereby allowing the state to introduce evidence of the circumstances surrounding and the actual prior conviction of attempted criminal trespass in the second degree, and (2) in failing to instruct the jury adequately concerning the admissibility of that evidence. We find no error.

The jury could reasonably have found the following facts: On December 1, 1984, at approximately 8 p.m., the victim heard a knock at the back door of her Park Terrace apartment in Hartford. The victim opened the door and upon observing the man standing there immediately tried to shut the door. The intruder, later identified by the complainant as the defendant, forced his way into the apartment. The two struggled for about thirty seconds until the defendant finally fled. The complainant screamed for help and chased him for a short distance. The apartment and back porch were well illuminated and the victim was able to observe her assailant's face. She returned to her apartment after losing the assailant and called the police. Upon discovering that she was bleeding from the right side of her chest she also telephoned an ambulance. The victim was taken to a local hospital for treatment of a stab wound. She gave a description of her assailant to the Hartford police department and, on December 20, 1984, she identified the defendant in a lineup as the person who had assaulted her on December 1, 1984. She also stated that he was the same man who had previously accosted her in August, 1984.

In August, 1984, while the complainant was walking her dog in a nearby park during daylight hours, she

[2] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

was approached by a man whom she later that day identified as the defendant. He walked alongside her for approximately fifteen minutes making sexual remarks, and followed her to her apartment complex. Although the complainant took a circuitous route to her specific apartment within the complex, and ducked into a building other than her own in an attempt to deceive him, an hour later she observed the man on her back porch standing near a screen which had been cut on three sides. She telephoned the police who responded promptly. The complainant positively identified the defendant as the culprit as he was seated in the police cruiser. The defendant was charged with and pleaded guilty, under the *Alford*[3] doctrine, to a charge of attempted criminal trespass in the second degree as a result of this incident.

Generally, evidence of prior misconduct cannot be used to prove bad character or criminal tendencies. Yet, such evidence may be admitted to prove a variety of other things, such as intent, identity, malice, motive, an element of the crime or modus operandi. *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986); *State* v. *Shindell,* 195 Conn. 128, 133, 486 A.2d 637 (1985); *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). Thus, evidence of prior misconduct is not per se inadmissible. The trial court, in analyzing the admissibility of the evidence must apply a two-prong test. First, the court must conclude that the offered evidence is relevant and material to one of the enumerated exceptions, e.g., motive, intent and identity. Second, the court must conclude that the probative value of the evidence outweighs its inevitable prejudicial effect. See *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983).

[3] In *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), the United States Supreme Court ruled that an accused may plead guilty without admitting the crime or even protesting innocence if there is strong evidence of guilt and the accused knowingly and intelligently concludes that such a plea is in his best interest.

The appropriate standard for reviewing the trial court's determination of the admissibility of the evidence based on this test has been clearly set forth by our Supreme Court. "[T]he trial court's discretion will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. On review, by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." *State* v. *Shindell,* supra, 134.

The trial court admitted the evidence of the August incident on the issues of identity, intent and motive. The issue of identity was raised by the defendant who offered an alibi defense. The evidence of the prior contact between the victim and the defendant was relevant to the victim's ability to identify the defendant as her attacker. The defendant concedes this relevance in his brief, yet argues that the fact that he was arrested and convicted of criminal trespass is irrelevant and immaterial. The circumstances of the encounter are, however, significantly related to the magnitude of the impression the defendant made on the victim. The circumstances reveal that the victim had ample opportunity and good reason to study the defendant's appearance. She was able to observe him as he walked alongside her and made suggestive remarks, as he followed her to her apartment complex, as he stood on her porch near the freshly cut screen of her apartment, and as he sat in a police cruiser some 10–15 feet from the victim. The victim's previous encounter with the defendant culminated in her identification of him as he was in police custody. The circumstances of the victim's prior identification were so intertwined with the prior criminal charge as to make it impossible to sever the two. To do so would allow the defendant to challenge the victim's ability to identify him and then to seek exclusion of the very evidence which enabled the victim to make the identification. The circumstances of

the August incident demonstrate how and why the victim could be so positive of the identity of her attacker four months later.

The defendant also contends that it was error to admit the evidence of the prior misconduct to prove intent or motive since neither was at issue. On cross-examination, however, defense counsel closely questioned the victim about the events surrounding her December stab wound, suggesting that it may have been inflicted accidentally and that the defendant did not intend to harm her. Evidence of the defendant's prior conduct was relevant to and probative of the defendant's intent in going to the victim's apartment. Such evidence was probative of the fact that the defendant intended to assault her in some way. In addition, evidence that the defendant had previously been convicted of a crime in which this same victim had been the complainant was relevant to and probative of the defendant's motive. It tended to prove that the defendant may have been hostile to the victim and attacked her to gain revenge.

During its charge, the trial court gave limiting instructions to the jury concerning the challenged evidence, expressly prohibiting its use to show bad character or a tendency to commit criminal acts. The court admonished the jurors that if they found the evidence credible, they should nonetheless limit its use to the issues of identity, motive and intent. " 'Limiting instructions serve to minimize the prejudicial impact of prior misconduct evidence.' " *State* v. *Brown,* supra, 58, quoting *State* v. *Howard,* 187 Conn. 681, 688, 447 A.2d 1167 (1982). On the basis of the record before us and the circumstances in the case, we cannot say as a matter of law that the trial court abused its discretion in concluding that the probative value of the evidence outweighed its prejudicial effect and in admitting the evidence.

As to the defendant's claim that the trial court should have given additional limiting instructions regarding the admissibility of that evidence during the trial, there is no indication on the record that the defendant ever requested additional instructions, or that he excepted to the court's charge in this regard. See Practice Book § 4185. Thus, such claim has been waived.

There is no error.

In this opinion the other judges concurred.