STATE OF CONNECTICUT *v.* FREDERICK N. LUCCI, JR.
(8394)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued May 3—decision released July 23, 1991

*Richard Emanuel,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, and *Susan Hankins,* assistant public defender, for the appellant (defendant).

*C. Robert Satti, Sr.,* state's attorney, with whom was *John P. Pannone,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70,[1] two counts of injury or risk of injury to, or impairing the morals of, a child in violation of General Statutes § 53-21,[2] one count of attempted sexual assault in the first degree in violation of General Statutes § 53a-49[3] and 53a-70, and one count of

[1] General Statutes § 53a-70 provides: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: One year not suspendable. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with a person under thirteen years of age.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

[2] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-49 provides: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required

threatening in violation of General Statutes § 53a-62.[4] The defendant claims that (1) the court deprived him of a fair trial by its failure to declare a mistrial sua sponte following the admission, and later striking, of prejudicial evidence, (2) the court incorrectly permitted the state to recall the complainant when the recall resulted from a violation of a sequestration order,

for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[4] General Statutes § 53a-62 provides: "THREATENING: CLASS A MISDEMEANOR. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience.

"(b) Threatening is a class A misdemeanor."

(3) the court improperly permitted the state to argue concerning a missing witness and mistakenly charged the jury on the missing witness rule, (4) the state's closing arguments were improper and deprived the defendant of a fair trial. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant and his family lived next door to the minor victim and her family. At the time of the occurrences in April, 1988, the minor victim was thirteen years of age. In January, 1988, the victim began babysitting for the defendant's children after school and on alternate weekends.

On Saturday, April 16, 1988, the victim went to the defendant's home to babysit for his children. Despite the fact that he was not scheduled to return until about 4 p.m., the defendant arrived home between noon and 12:30 p.m. He made advances toward the victim who resisted him. The defendant picked up the victim, placed her over his shoulder and carried her screaming and protesting upstairs to a bedroom where he threw her on the bed. When she attempted to leave, the defendant prevented her from doing so, threw her back on the bed, pulled off her shirt, pulled down her pants and sexually assaulted her. The defendant told the victim not to tell either of her parents what had occurred.

On or about April 20, 1988, the victim picked up the defendant's children from their daycare provider and returned to the defendant's home with them at about 3:30 p.m. The defendant came home at about 3:45 p.m., approached the victim, who was seated on a couch, pinned down her shoulders, and tried to remove her shirt telling her that he wanted to have sexual intercourse with her again. The defendant held the victim down but was unable to remove her shirt. He picked

up a knife from a coffee table and scratched her cheek with it. He then let her go, telling her he would kill her if she told anyone.

Sometime after the incident with the knife, a friend of the victim noticed a scratch on the victim's cheek. When asked about its origin, the victim told her friend that the defendant had attempted to "make a move on me" while she was babysitting for his children, that she had resisted, that he had scratched her with a knife, and that he had thrown a chair at her when she attempted to get away.

After the second occurrence, the victim received notes from the defendant in which he threatened to kill her if she told anyone what he had done. She showed the notes to the friend she had already confided in, and her friend showed one of the notes to her older brother. The brother counseled the victim to tell her parents about what had happened. Toward the end of April, 1988, the victim received a telephone call from the defendant in which he threatened to kill her.

The victim went on a school trip to Washington, D.C., from May 10 to May 13, 1988. Her friends noticed that she was very upset, that she cried and talked about killing herself. One friend asked her why she was so upset, and she replied that while she was babysitting for a neighbor's children, he had tried to rape her. The victim said that she was frightened of her neighbor, and that she did not want to tell her parents because he had said he would kill her if she told anyone. She also told her friend about how the defendant had used a knife on her, and had thrown a chair at her.

The friends in whom the victim had confided contacted the school guidance counselor who then contacted the victim's parents. Her parents contacted the police. Two police officers talked with the victim and her parents. At this time, the victim related only the

incident involving the knife on April 20, 1988, to the police. No formal statement or report was made at that time. The victim denied that she had been raped, or that other incidents had occurred when she was questioned by the police and her parents.

The victim came under the care of a clinical therapist sometime after May 24, 1988. On July 7, 1988, she told the therapist that she had been raped by the defendant and subsequently told her parents that he had raped her. On July 28, 1988, the victim gave a statement to the police describing both incidents.

A physical examination performed on the victim disclosed that her hymen was not intact, that the condition could have been the result of penetration by a penis, and that this condition was consistent with sexual intercourse.

I

The defendant first claims that he was deprived of a fair trial by the trial court's failure to sua sponte declare a mistrial following admission into evidence, and then the later striking, of testimony that he claims was of a highly prejudicial nature.

We first note that despite repeated invitations from both the state's attorney and the trial court, the defendant declined to move for a mistrial at this point in the proceedings. In fact, on at least two occasions, the defendant clearly stated that he would not move for a mistrial. Later, the defendant moved to strike certain portions of the testimony in question and that motion was granted by the court.

Our review of the record indicates that the jury was clearly instructed as to the testimony that was stricken, and the trial court emphasized that the stricken testimony could not be used for any purpose, including determining the credibility of the witness or the com-

plainant. The defendant took no exception to the court's striking of portions of the testimony or to the court's curative instruction. Upon completing the curative instruction the trial court again excused the jury and the defendant was again invited to comment. Counsel responded that "[t]here is no motion pending, and I have nothing to address to the court." Whereupon the trial court found that what had occurred had not deprived the defendant of a fair trial, that the jurors would be able to follow the curative instruction, and that the stricken testimony, in large measure, was repetitive of the victim's earlier, properly admitted testimony. Based on these factors the court held that there was no need to declare a mistrial on its own motion. Again, the defendant offered no objection, and took no exception, to the trial court's findings or its decision not to act sua sponte.

As a threshold issue we must first determine whether this claim is reviewable, not having been raised in the trial court. The defendant asserts that the claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We are mindful of the fact that the defendant has not asserted the reviewability of this issue under *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989), which expanded and reformulated *Evans.* Our review of the record, however, convinces us that the issue is reviewable under the *Golding* standards. See *State* v. *Fleming,* 198 Conn. 255, 265, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). The defendant further posits that because this issue revolves around the trial court's inaction when it was legally required to act, no motion or objection and exception are required for review. Because we conclude that this issue is reviewable under *Golding,* we do not reach this secondary claim of reviewability.

The decision as to whether to grant a motion for a mistrial, or to grant a mistrial on the court's own motion, is one that requires the trial court to exercise its judicial discretion. See *State* v. *Maldonado,* 193 Conn. 350, 356, 478 A.2d 581 (1984). " '[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion . . . there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion . . . .' " *Gori* v. *United States,* 367 U.S. 364, 368–69, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961). Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. *State* v. *Angelo,* 25 Conn. App. 235, 241, 594 A.2d 24 (1991); see *Timm* v. *Timm,* 195 Conn. 202, 210, 487 A.2d 191 (1985).

It is axiomatic that a mistrial should be granted only if something occurs in the course of the trial that makes it apparent to the court that a party cannot have a fair trial and the whole proceedings are vitiated. *State* v. *Peary,* 176 Conn. 170, 172–73, 405 A.2d 626 (1978), cert. denied, 441 U.S 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979).

A trial judge is given great latitude in ensuring that a criminal trial be conducted in a manner that approaches, as nearly as possible, an " 'atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding.' " *State* v. *Brigandi,* 186 Conn. 521, 543, 442 A.2d 927 (1982). Given the fact that the trial judge is not simply a referee presiding over a forensic contest, but is a minister of justice, he is, for that purpose, vested with the authority to exercise a reasonable discretion in the conduct of a trial. Id. A trial court's evaluation as to events occurring before the jury is to be accorded the highest deference. *United*

States v. *Grasso,* 600 F.2d 342, 343 (2d Cir. 1979).
Every reasonable presumption will be given in favor
of the trial court's ruling. *State* v. *Rodriguez,* 10 Conn.
App. 176, 179, 522 A.2d 299 (1987).

It is only when an abuse of discretion is manifest or
where an injustice appears to have been done that a
reversal will result from the trial court's exercise of
discretion. *State* v. *Angelo,* supra; *State* v. *Devanney,*
12 Conn. App. 288, 292, 530 A.2d 650 (1987); see *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 192,
510 A.2d 972 (1986).

Our review of the record satisfies us that the trial
court did not abuse its discretion in not ordering a mistrial on its own motion. We are satisfied that the
stricken testimony was cumulative in nature, that the
trial court's curative instructions were very thorough,
and that the trial court's actions in this regard followed
the defendant's request. Thus, the defendant's right
to a fair trial was more than adequately protected and
his claim to the contrary must fail. See *State* v.
*Autorino,* 207 Conn. 403, 411–12, 541 A.2d 110, cert.
denied, 488 U.S. 855, 109 S. Ct. 144, 102 L. Ed. 2d
116 (1988); *State* v. *Van Sant,* 198 Conn. 369, 384, 503
A.2d 557 (1986).

II

The defendant next claims that the trial court improperly permitted the state to recall the complainant to
the witness stand and denied his motion to strike her
testimony on recall, where the recall resulted from the
violation of a sequestration order. We do not agree.

Certain additional facts are necessary to a resolution
of this issue. The complainant completed her testimony
before the jury on June 15, 1989. Thereafter, the court
did not sit until June 20. When the trial court reconvened, the state requested permission to recall the vic-

tim. The state's attorney indicated that information had been brought to his attention indicating that one of the events may have occurred on April 21, 1988, as opposed to April 20, 1988. Over the objection and exception of the defendant, the victim was permitted to testify.

It appears to be the universal rule that the matter of recalling a witness after she has testified rests completely within the sound judicial discretion of the trial court, and the exercise of that discretion will not be interfered with absent a clear showing that there was an abuse of that discretion. *State* v. *Brigandi,* supra, 546.

Here, the state had information that indicated that one of the offenses might have occurred on April 21, 1988, rather than on April 20, 1988, as the testimony of the victim had originally indicated. Because time is not an essential element of the crimes charged against the defendant, the evidence was not crucial. " '[W]here time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material.' " *State* v. *Laracuente,* 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). Although eschewing the claim of the defense of alibi, the defendant argues that it was unfair to permit the additional testimony because there was evidence that, contrary to the victim's assertion, she did not pick up one of the defendant's children at daycare on April 20, 1988. Under our law, even if the defendant intended to present a defense of alibi, there is no per se requirement that the state limit the times in the information more narrowly than the evidence that is available warrants. *State* v. *Stepney,* 191 Conn. 233, 241 n.4, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 722 (1984). Because time is not an element of the offenses charged, the trial court did not abuse its discretion in permitting the state to recall the victim.

The defendant further claims that the trial court improperly denied his motion to strike the testimony of the victim. Our review of the record fails to disclose any defense motion to strike the victim's testimony. We decline to engage in speculation as to whether the failure to move to strike was inadvertent or a trial tactic. Because the record does not reveal a motion to strike the victim's testimony, this issue is not reviewable. See *State* v. *Hickey,* 23 Conn. App. 712, 717–18, 584 A.2d 473, (1991).

We also decline to review the claimed violation of the sequestration order because the record is devoid of any factual claim that the testimony of any witness had been improperly divulged to another witness. It is the appellant's burden to furnish an adequate record to raise a claimed error. *State* v. *Laracuente,* supra, 520.

The claim of the defendant is without merit.

## III

The defendant next claims that the trial court acted improperly in the giving of a so-called *Secondino*[5] or missing witness charge. He claims that the giving of such a charge in a criminal case is unconstitutional. In the alternative, he argues that if the charge is not unconstitutional, its use should be rejected because of our Supreme Court's elimination of the voucher rule. As a third alternative argument he posits that there was an insufficient factual predicate for the giving of the charge. Finally, he argues that as given, the charge was improperly formulated. We are unpersuaded by any of these arguments.

## A

The claim of the alleged constitutional infirmity of the missing witness charge has been dealt with in a con-

[5] *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960).

sistent fashion by a long line of cases holding that such a charge does not, in any way, violate a defendant's constitutional rights. See, e.g., *State* v. *Peary,* supra, 182; *State* v. *Annunziato,* 169 Conn. 517, 536–37, 363 A.2d 1011 (1975); *State* v. *Hudson,* 14 Conn. App. 463, 471, 541 A.2d 534 (1988). We adhere to the view previously expressed, i.e., that this charge in no way violates a defendant's constitutional rights.

## B

The defendant next argues that if we are unpersuaded by the constitutional argument, we should abandon the missing witness rule because of the Supreme Court's previous abandonment of the common law voucher rule that prohibits a party from impeaching or discrediting his own witness except under limited circumstances. *State* v. *Graham,* 200 Conn. 9, 17, 509 A.2d 493 (1986). Despite the defendant's argument that the missing witness rule "fit like a glove on the hand of the voucher rule," we are not persuaded that one follows the other. The defendant's argument ignores the basis of the missing witness rule. "[T]he evidentiary basis for the *Secondino* inference derives from the maxim that ' "all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted." ' " *State* v. *Shashaty,* 205 Conn. 39, 44, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988). Because the elimination of the voucher rule has not materially affected the viability of *Secondino,* we decline to accept the defendant's invitation to abandon the missing witness charge.

## C

The defendant next claims that there was an insufficient factual predicate on which to base the giving of the *Secondino* charge. We do not agree.[6]

---

[6] The defendant also claims that the remarks made by the state's attorney concerning the *Secondino* instruction were improper. We need not

Before a missing witness charge may be given, two requirements must be met: (1) the witness must be available; and (2) he must be a witness whom the party would naturally produce. *State* v. *Anderson,* 212 Conn. 31, 41, 561 A.2d 897 (1989). When those two conditions exist, an inference may be drawn that the testimony of that witness would be unfavorable to the party's cause. *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928).

Our review of the record leads us to conclude that the trial court correctly found that the state had met the factual predicate so as to entitle it to the charge.

### D

The defendant further claims that the instruction of the trial court was improper in that it instructed the jury that "[t]he failure of a party to call as a witness a person *who is available to both parties* and who does *not* stand in such a relationship to the party in question, or to the issues, so that party would naturally be expected to produce him if his testimony was favorable, *affords the basis for an unfavorable inference.*" (Emphasis added.) The state concedes that the portion of the instruction was an incorrect statement of the law. This, however, does not end our inquiry.

The erroneous instruction engenders a claim arising under state law and does not involve any constitutional right; *State* v. *Shashaty,* supra; therefore, "the defendant bears the burden of proving harmful error." Id.

In order to meet his burden, the defendant must show that the misstatement that was contained in the charge and concerned one aspect of *Secondino,* was likely to have affected the verdict. *State* v. *Brown,* 187 Conn.

address this claim in light of our conclusion that the instruction was properly given. See *State* v. *Hudson,* 14 Conn. App. 463, 471 n.4, 541 A.2d 534 (1988).

602, 611, 447 A.2d 734 (1982). This he has not done. The case against the defendant was a strong one. See generally *State* v. *Gonzalez,* 197 Conn. 677, 682–83, 500 A.2d 1330 (1985). The victim was consistent in her claim that it was the defendant who had sexually assaulted her, in her description of where these assaults had occurred, and in her detail of the methods used by the defendant. Taken as a whole, the charge fairly presented the issues to the jury so that no injustice was done. *State* v. *Piskorski,* 177 Conn. 677, 746, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Turner,* 24 Conn. App. 264, 275, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991). Thus, because the defendant has failed to sustain his burden of showing that the single misstatement regarding *Secondino* affected the verdict, he cannot prevail.

## IV

The defendant's final claim is that certain remarks that were made by the state's attorney during his jury arguments deprived the defendant of his right to a fair trial under article first § 8, of the Connecticut constitution and under the fourteenth amendment to the federal constitution. The defendant concedes that he took no action on these claims in the trial court, but claims reviewability under the doctrine of *State* v. *Evans,* supra, and *State* v. *Golding,* supra. We disagree.

We have read the arguments of both counsel in their entirety in order to determine whether the remarks of the state's attorney rise to the level of egregious misconduct that would implicate the defendant's right to a fair trial. *Floyd* v. *Meachum,* 907 F.2d 347, 353 (2d Cir. 1990). We conclude that they do not.

Although we do not approve of some of the arguments advanced by the state's attorney in final argument; see, e.g., 1 ABA Standards for Criminal Justice

(2d Ed.) § 3-5.8 (b); in particular those portions set forth below,[7] we conclude that the cumulative effects of the remarks did not violate the defendant's right to a fair trial; but see *Floyd* v. *Meachum,* supra; and therefore, do not raise a question of constitutional magnitude. See *State* v. *Williams,* 204 Conn. 523, 537, 529 A.2d 653 (1987).

The alleged prosecutorial misconduct was not severe. Trial counsel for the defendant, who had been assiduous in his protection of the rights of the defendant throughout the trial, was so unimpressed by the alleged prosecutorial misconduct that he neither objected to the remarks nor asked for a curative instruction. Finally, the case against the defendant was a strong one. See *United States* v. *Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982). Thus, this case is clearly distinguishable from *Floyd* v. *Meachum,* supra, where,

---

[7] We disapprove of the following excerpts of arguments made by the state's attorney to the jury: "I submit she has told you nothing but the truth. And I suggest to you, ladies and gentlemen, the issue of guilt or innocence and the nonguilt of the defendant, but you are sitting in judgment that not only on this defendant, you are sitting in judgment on this thirteen year old [victim]. There is only one issue here. If you stop and think about it, there is only one issue in this case, is [the victim] a liar. That is the only issue. She didn't have forgetfulness, except maybe this much [indicating]. The only issue here is, is the victim a liar."

In the course of his closing argument, the defendant made the following statement that prompted the response about which he now complains.

"Ladies and gentlemen, what you have heard during this case from the state of Connecticut, the evidence that you have heard during this case from the state of Connecticut, the evidence that you have heard is a pyramid. It is not the traditional kind of pyramid that you think of; it is inverted; it stands on a point. And I think you know what that point is, two words are the point upon which this pyramid stands. Those words are '[the victim] says.'

"Ladies and gentlemen, there is an exception to that in the state's proof, which I will get to, something that is not based just on what [the victim] said, but I submit to you that 99 percent of what you have heard [is] based on what [the victim] said. What I just told you was volume one of the state's case. On June twentieth, you heard volume two of the state's case. You may recall the state was permitted to bring [the victim] back to the stand.

not only was the misconduct pervasive, but the principal witness against the defendant had, according to the defendant's theory of the case, the alleged motive, opportunity and means to commit the acts with which Floyd had been charged. *Floyd* v. *Meachum,* supra.

Our reading of the totality of the trial transcripts and arguments leads us to conclude that the remarks now challenged by the defendant represent isolated instances of alleged misconduct that are unrepresentative of any pattern of conduct that was repeated throughout the trial. We, therefore, decline to review the propriety of these remarks. *State* v. *Castonguay,* 218 Conn. 486, 507–508, 590 A.2d 901 (1991); *State* v. *Watlington,* 216 Conn. 188, 193, 579 A.2d 490 (1990); *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990); *State* v. *Russell,* 25 Conn. App. 243, 594 A.2d 1000 (1991); *State* v. *Peruta,* 24 Conn. App. 598, 609, 591 A.2d 140 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.

She gave a new version of the events of April twentieth. Mr. Satti had met with [the victim] the day before, on the nineteenth at 1:15 or something in his office, I don't recall exactly when. Now, volume three occurred this morning, and I was a bit surprised. You will recall Mr. Satti introduced evidence of assemblies and school functions and so forth trying to bolster the theory that it occurred on Thursday, the twenty-first, but he argued before you today it was the twentieth, but that you could find it on the twenty-first, if you wanted to."

In his rebuttal the state's attorney replied as follows: "And if in the course of his argument, Mr. Guernsey suggested to you about the state writing volume one and two and this is volume three, I want to suggest to you, and I mean this as sincerely as I can, I am the representative of the state of Connecticut in this matter, and I don't care what you think about me. Don't misunderstand me, I, like anyone, want people to like me. That is human nature. But what I am saying is this, that if you think that I, as a representative of the state of Connecticut, the state's attorney, [am] trying to put a phony story in front of you, the jurors, just to hang Fred Lucci, then I don't even deserve a half-a-minute. Please go in and elect your foreman and foreperson and come out here right away and say you, sir, should not do this to this man. But that is what Mr. Guernsey is telling you. We are switching our stories as we go along."