STATE OF CONNECTICUT *v.* DAVID WILLIAM SALERNO
(12348)

LAVERY, LANDAU and SCHALLER, Js.

Argued September 29—decision released November 15, 1994

*Gary A. Mastronardi,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Devin T. Stilson,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, David William Salerno, appeals from a judgment of conviction, rendered after a jury trial, of criminal attempt to possess a narcotic substance with intent to sell in violation of General Statutes §§ 53a-49 and 21a-277 (a).[1] On appeal, the defendant claims that the trial court (1) improperly denied his motion to dismiss the prosecution on the grounds of "outrageous governmental conduct," and (2) abused its discretion in denying his motions for a mistrial and for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 17, 1992, the defendant purchased, for $8000 and a promise to pay an additional $7000, what he believed was one kilogram of cocaine from a Danbury police operative. His arrest on that day was the culmination of a reverse sting operation conducted by the police.[2] In November, 1991, the defendant became friendly with Johnny Soto, who accompanied Diego Builes, a drug dealer, on his cocaine delivery rounds. The defendant was a customer of Builes. In February, 1992, the defendant contacted Soto and

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 21a-277 (a) provides in pertinent part: "Any person who . . . possesses with the intent to sell . . . a narcotic substance . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned . . . ."

[2] A reverse sting occurs when a suspected drug dealer is introduced to a police operative posing as a supplier of controlled substances who attempts to sell the dealer simulated narcotics.

asked for his help in obtaining some cocaine. The defendant did not know that Soto was an informant for Detective Daniel Trompetta of the Danbury police. Soto told the defendant that he knew a cocaine supplier named Al (Alfonso Estubinian, another informant for the Danbury police) and it was agreed among the parties that the defendant would purchase one kilogram of cocaine from Estubinian for $9000 and a promise to pay another $6000. The delivery was to be made on February 15, 1992, at the parking lot of the Ramada Inn in Danbury. Soto and the defendant met Estubinian, who was wearing a transmitter that was monitored by the police, at the agreed time and place, but the transaction was not completed because the defendant did not have the $9000. Another meeting was scheduled for February 17.

On February 17, Soto and the defendant again met and drove in separate vehicles toward the meeting place. Before arriving there, the defendant joined Soto in his car so that they could arrive together. Estubinian was outfitted with a transmitter and the police again monitored and recorded the conversation. The defendant showed Estubinian $8000 and Estubinian went to retrieve the kilogram of cocaine, signaling to the police that the deal was imminent. When Estubinian handed the package to the defendant, the police converged on the scene, arrested the defendant with the kilogram on his lap, and seized the money. The kilogram was flour packaged as narcotics.

At trial, the defendant argued entrapment as a defense. He maintained that the police had induced him to commit the crime and that he was not otherwise predisposed to being an upper level drug dealer. The jury, instructed by the trial court on the defense of entrapment, returned a conviction and this appeal followed.

I

The defendant first claims that the trial court improperly declined to dismiss the prosecution against him on the grounds of "outrageous governmental conduct." This assertion subsumes two contentions: (1) that the actions of the police were so outrageous as to be fundamentally unfair and therefore a denial of federal constitutional due process; and (2) that the actions of the police were so outrageous as to be fundamentally unfair and therefore a denial of state constitutional due process.[3]

On October 28, 1992, during the state's case-in-chief, the defendant moved to dismiss the prosecution against him. The basis of the defendant's due process arguments was that the charges against him were the result of illegal conduct by state law enforcement officials.[4] The state responded that the actions of the police in this case were not fundamentally unfair, and that although the defendant was entitled to seek suppression of evidence, he was not entitled to a dismissal of the charges.

Initially, the trial court denied the motion to dismiss as premature because the state had yet to rest its case. The court did, however, discuss *State* v. *Fleming,* 198

---

[3] In his brief, the defendant claimed a third issue—that the actions of the police were so outrageous as to constitute entrapment as a matter of law. In his reply brief, in light of *State* v. *Lee,* 229 Conn. 60, 640 A.2d 553 (1994), he withdrew all statutory claims relating to "objective entrapment" or "entrapment as a matter of law."

[4] At the hearing, the defendant asserted that "[t]he claim is due process. It's based on fundamental fairness. And the gist of the claim . . . is over involvement of law enforcement in the illegal conduct. And—in other words, Your Honor, in a situation where the government or the state or law enforcement in essence places its imprimatur—its stamp of approval on conduct— involves the defendant into the situation and then ultimately makes an arrest." Salerno also pointed out that the cases on which his claim relied were decided "not on entrapment."

Conn. 255, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986),[5] and stated that the appropriate remedy for the defendant in this case would be a motion to suppress. The defendant did not question the court's comments. At the conclusion of the state's case-in-chief, the defendant renewed his motion to dismiss, again asserting outrageous governmental conduct. The trial court ruled that "[t]he court has heard a lengthy argument on this particular proposition before. And while it indicated it was not the proper time to make it, this certainly is. And the court again rules that the motion to dismiss is denied."

The state asserts that the record is inadequate for review of this issue. We agree. It is the responsibility of the appellant to provide this court with an adequate record for review. Practice Book § 4061; *State* v. *Rosedom,* 34 Conn. App. 141, 144, 640 A.2d 634 (1994). A lack of pertinent factual findings and legal conclusions will render a record inadequate. *State* v. *Rios,* 30 Conn. App. 712, 719–20, 622 A.2d 618 (1993) (*O'Connell, J.,* concurring). Similarly, ambiguity in a record can render it inadequate. *State* v. *Murray,* 225 Conn. 524, 527, 624 A.2d 377 (1993).

After reviewing the record, we cannot discern the reasoning of the trial court when it denied the motion to dismiss. The trial court's discussion of *Fleming* suggests that its ruling was based on its interpretation and application of that decision. On the other hand, the trial court's comment that it "has heard lengthy argument

---

[5] Convicted of the crime of felony murder in connection with the death of an individual during the robbery of a package store, Fleming appealed to the Supreme Court claiming that the charges against him should have been dismissed because his arrest was illegal. The court held that an illegal arrest imposes no jurisdictional bar, under either the state or federal constitutions, to a defendant's subsequent prosecution where the fairness of that prosecution has not been impaired by that illegal arrest, and that *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), to the extent that it holds to the contrary, was overruled.

on [the outrageous governmental conduct] proposition before" suggests that the court ruled on the substance of the motion. There are, however, no articulated factual findings or legal conclusions regarding outrageous governmental conduct.[6] We disagree with the defendant's contention that "it is abundantly clear" that the trial court "obviously perceived the issue raised by his motion as a suppression issue going to the legality of his arrest." It is just as clear from the trial court's comments that it may have ruled on the substance of the motion.

This court's role " 'is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court.' " *State* v. *Hoeplinger,* 27 Conn. App. 643, 647, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). The record regarding the defendant's claim of outrageous governmental conduct is inadequate because the basis of the challenged ruling is ambiguous; see *State* v. *Murray,* supra, 225 Conn. 527; and because it is devoid of necessary factual findings and legal conclusions.[7] "When our rules of practice are not followed, and the record is not rectified, we are left to guess or speculate as to the existence of a factual predicate." *State* v. *Rosedom,* supra, 34 Conn. App. 145–46. As it is not the function of this court to find facts, we decline to review this claim.

## II

The defendant's second claim is that the trial court improperly denied his motions for a mistrial and a new trial. The following facts are necessary for the resolu-

---

[6] The defendant baldly concludes that outrageous governmental conduct exists. Without the trial court's findings of fact, the defendant's claim of outrageous governmental conduct cannot be resolved without this court's finding facts drawn from the conflicting testimony of the several witnesses.

[7] The rules of practice offer assistance to the appellant in providing a reviewing court with an adequate record. See *State* v. *Rios,* supra, 30 Conn. App. 716–20. The defendant did not avail himself of this option.

tion of this claim. During cross-examination by the state, the defendant testified that he did not know Builes and had never met him. He further testified that he had not been with Montenaro in a pickup truck at a McDonald's restaurant off exit five of Interstate 95 on December 4, 1991, and that he had not left that truck, or approached a car occupied by Soto and Builes or taken possession of a package from Builes.

In rebuttal, the state recalled Trompetta who testified that on December 4, 1991, while assisting Bridgeport police officers in a surveillance of McDonald's off exit five of Interstate 95, he had observed a car occupied by Soto and Builes enter the parking lot and park next to a pickup truck. The truck was occupied by three males, one who Trompetta believed was Montenaro and another, the defendant.

On cross-examination, Trompetta testified that he personally did not know who owned the truck, but that the Bridgeport police had informed him that it belonged to Montenaro. Trompetta further responded that he knew what Montenaro looked like and described him to the jurors. He then testified that he saw someone in the truck "who the Bridgeport police told me was Gary Montenaro." The defendant moved to have Trompetta's testimony stricken. The trial court granted the defendant's motion and immediately gave a cautionary instruction to the jury.[8]

Outside of the presence of the jury, the defendant orally moved for a mistrial,[9] claiming that the damage

---

[8] The trial court stated: "The motion is well taken. The jury will disregard it at this point. He is reporting hearsay. It's excluded and I'm directing you not to consider it—any part of it. And you're obligated to follow that instruction. It is ordered stricken. You will not consider it."

[9] The defendant, in his brief, alleges that "at the time Trompetta testified on the state's rebuttal case, he and the prosecutor deliberately led the court, the jury and the defense to believe that he was testifying based upon his own personal knowledge." In his reply brief, the defendant asserts that

done by Trompetta's stricken testimony could not be "cleansed" from the minds of the jurors by the instruction. The court denied this motion.[10] The defendant neither requested that a second curative instruction be included in the final charge to the jury, nor took an exception to the absence of any such instruction.[11]

Trompetta's testimony was "offered with full advance knowledge on the part of either the prosecutor, or Trompetta, or both." The defendant, however, made no claim of prosecutorial misconduct at the time of trial. In fact, he stated to the trial court, "I didn't know if [the prosecuting attorney] knew [of Trompetta's lack of personal knowledge] or not when he put the witness on the stand." The defendant pressed no claim of prosecutorial misconduct at the time of trial; moreover, his present suggestion of prosecutorial misconduct is unsupported and speculative. He has suggested no exceptional circumstances to warrant departure from the general rule that limits appellate review to those issues on which the trial court has had an opportunity to rule. *Knight* v. *Bourbeau,* 194 Conn. 702, 704 n.3, 485 A.2d 919 (1984).

[10] The trial court ruled: "This evidence was [admitted] for the limited purpose of challenging the credibility of [the defendant] on a particular point. It is not an essential element of the case, to be sure. And the court is satisfied that its curative instruction has in fact solved the problem. At this point your motion for mistrial is denied."

[11] Prior to the verdict, on November 23, 1992, the defendant filed a written motion for mistrial requesting that the trial court reconsider its denial of his oral motion for mistrial. This was denied in court on November 23, 1992. On November 25, 1992, the defendant filed a motion for judgment of acquittal based on the theory of "legal impossibility" and "insufficiency of evidence." The trial court denied this motion on March 23, 1993. On November 25, 1992, the defendant filed a motion for a new trial based on Trompetta's stricken testimony that repeated the reasons set forth in his written motion for mistrial.

On April 29, 1993, the defendant requested an articulation on his motion for a new trial. On July 27, 1993, the trial court filed its articulation, in which it reiterated its earlier denial of the motions for mistrial and stated: "[U]pon the objection by [the defendant] to the testimony of Detective Trompetta as hearsay, and hearing counsel fully on the objection, the court sustained it and immediately instructed the jury to disregard it. The court perceived no change in the facial expressions of any of the jurors much less any change in posture that might suggest that the individual members thereof were particularly attentive to, interested in or affected in any way by that testimony. The court is satisfied that it made no impression upon them whatsoever. It might also note that the jury's reaction to the curative instruction on being told to disregard the evidence and not to con-

"Due process requires that a criminal defendant be given a fair trial before an impartial jury. U.S. Const., amend XIV; Conn. Const., art. I, § 8; *State* v. *Brigandi,* 186 Conn. 521, 542, 442 A.2d 927 (1982). A new trial, however, is not required every time ' "a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." ' *Rushen* v. *Spain,* 464 U.S. 114, 118, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983), quoting *Smith* v. *Phillips,* 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

"The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. *State* v. *Hancich,* 200 Conn. 615, 624–25, 513 A.2d 638 (1986); *State* v. *Gaston,* 198 Conn. 490, 495–96, 503 A.2d 1157 (1986); *State* v. *Ubaldi,* 190 Conn. 559, 562, 464 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). The trial court enjoys wide discretion in deciding whether a mistrial is warranted; *Speed* v. *DeLibero,* 215 Conn. 308, 315, 575 A.2d 1021 (1990); *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982); and its evaluation as to events occurring before the jury is to be accorded the

sider it in any way whatsoever. Assuming, arguendo, the existence of some prejudice from this testimony, any such prejudice was minimized, if not eliminated."

On August 6, 1993, a hearing was held "[i]n view of the representation that no ruling was ever entered on the defendant's motion for a new trial." On September 17, 1993, the trial court issued a memorandum of decision in which it reiterated its observations of the jury's reaction to the stricken testimony and the court's curative instruction, and denied the defendant's motion for a new trial.

highest deference. *United States* v. *Grasso*, 600 F.2d
342, 343 (2d Cir. 1979). Every reasonable presumption
will be given in favor of the trial court's ruling; *State*
v. *Rodriguez*, 10 Conn. App. 176, 179, 522 A.2d 299
(1987); because the trial court, which has a firsthand
impression of the jury, is in the best position to evalu-
ate the critical question of whether the juror's or jurors'
exposure has prejudiced a defendant. See, e.g., *United
States* v. *Wiley*, 846 F.2d 150, 157 (2d Cir. 1988); *State*
v. *Asherman*, 193 Conn. 695, 736, 478 A.2d 227, cert.
denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d
814 (1985). It is only when an abuse of discretion is man-
ifest or where an injustice appears to have been done
that a reversal will result from the trial court's exer-
cise of discretion. *State* v. *Rodriguez*, 210 Conn. 315,
326, 554 A.2d 1080 (1989); *State* v. *Fleming*, [supra,
198 Conn. 264]." *State* v. *Harvey*, 27 Conn. App. 171,
177–78, 605 A.2d 563, cert. denied, 222 Conn. 907, 608
A.2d 693 (1992).

The trial court was well aware of the effect of Trom-
petta's testimony. It found, on the basis of its own
observations, that the jurors were not "particularly
attentive to, interested in or affected in any way by
[Trompetta's] testimony." It nonetheless struck the tes-
timony and instructed the jury to disregard any and
all of Trompetta's testimony. The court was "satisfied
that its curative instruction [had] in fact solved the
problem." In the court's articulation directed to the
defendant's motion for a new trial, it reiterated its
earlier statement and stated that the court "also note[s]
that the jury's reaction to the curative instruction was
that two jurors nodded their heads less than enthusiasti-
cally on being told to disregard [Trompetta's testimony]
and not to consider it in any way whatsoever. Assum-
ing, arguendo, the existence of some prejudice from
this testimony, any such prejudice was minimized, if
not eliminated." The trial court occupied the best van-

tage point for assessing courtroom events. We, therefore, must afford great deference to its conclusions.

We cannot say that the conduct at issue, in light of the curative measures administered by the court, so jeopardized the defendant's right to a fair trial that the trial court abused its discretion in denying his motion for a mistrial or for a new trial. The defendant's right to a fair trial was more than adequately protected and his claim to the contrary must fail.

The judgment is affirmed.

In this opinion the other judges concurred.