STATE OF CONNECTICUT *v.* LESBURN HARVEY
(9654)

DALY, NORCOTT and LANDAU, Js.

Argued December 10, 1991—decision released March 24, 1992

*Neal Cone,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Alfred C. Baldwin,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Lesburn Harvey, appeals from a judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b). On appeal, the defendant raises the following claims: (1) the trial court improperly denied his motion for a mistrial after the

state introduced inadmissible prejudicial evidence; (2) a pattern of conduct repeated throughout the course of the trial and the state's closing argument constituted prosecutorial misconduct that violated his right to a fair trial; (3) the trial court improperly permitted the arresting officer to testify as both a fact witness and an expert witness; and (4) the trial court improperly instructed the jury on expert testimony, on the presumption of innocence, and on reasonable doubt. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On August 22, 1989, at approximately 8:30 p.m., Detectives Anthony Battistone and Christopher Lyons of the Hartford police department received a telephone call from an unidentified informant indicating that an individual named Les, who was dressed all in white, was selling narcotics out of a parked car in the area of 139 Homestead Avenue in Hartford. In response to the telephone call, plain clothes detectives in an unmarked car drove to the area indicated in the telephone call to conduct a surveillance.[1]

The officers observed four individuals attempting to wave down passing cars. They further observed the defendant, who was dressed all in white, enter an apparently abandoned black Volvo and remove small plastic packages from the backseat, hand the packages to various individuals, whom the other four had stopped, receive money in exchange, and place the money in his pocket. At this point, the officers arrested the defendant. A search of the vehicle produced eleven blue plastic bags containing a substance later identified as marihuana, and four clear plastic bags containing a white powder later identified as cocaine. A search of the defendant's person produced $561.

---

[1] Upon reaching the area, the detectives radioed for backup. Detectives Richard Perrotta and James Pasqurell responded.

## I

The defendant first claims that the trial court improperly denied his motion for a mistrial after the state introduced inadmissible prejudicial evidence. We disagree.

The following additional facts are necessary to resolve this claim. On the eve of trial, the defendant filed a motion in limine requesting a ruling by the court regarding the admissibility of the contents of a telephone call to the police in which an unidentified informant related that an individual named Les, dressed all in white, was selling narcotics out of a parked car in the area of 139 Homestead Avenue in Hartford. The defendant, relying on *State* v. *Milner,* 206 Conn. 512, 539 A.2d 80 (1988),[2] sought to preclude the state from "mentioning or stating what information was received from an alleged informant . . . until the court has ruled on the admissibility of said information." He argued that the information was hearsay that did not fall within any recognized exception to the hearsay rule. The trial court entered an order that "no evidence concerning information received from an informant may be *intentionally* introduced unless prior to the presentation of such evidence, the state, outside the presence of the jury, gives oral notice to the trial judge of his intention to present such evidence before the jury."[3]

Prior to calling its first witness, the state, pursuant to the trial court's order, informed the court that it would be questioning the witness regarding the telephone call placed by the unidentified informant. The state's attorney argued, relying on *State* v. *Cruz,* 212

---

[2] In *State* v. *Milner,* 206 Conn. 512, 539 A.2d 80 (1988), our Supreme Court ruled that the trial court improperly admitted the unidentified informant's statement under the business record exception to the hearsay rule.

[3] The trial court added the intentionality requirement by writing in the word "intentionally" to the order that was prepared by the defendant.

Conn. 351, 356, 562 A.2d 1071 (1989), that he was attempting to introduce evidence of the telephone call to show its effect on the listener and to explain the listener's subsequent conduct, not for the truth of the statement contained therein.[4] The defendant argued that because the essence of his defense was that he was not selling narcotics, the statement was being offered for the truth of the matter asserted and, therefore, was inadmissible hearsay.

The trial court, here, concluded that the statement was permitted in *State* v. *Cruz,* supra, for the limited purpose of explaining the witnesses' actions and noted that the *Cruz* court determined that if the witnesses had been permitted to testify to the specific contents of the statement, the testimony would have been inadmissible. Id., 357. The court also noted that in *Cruz* no testimony was elicited as to anything the defendant did or was accused of doing, but that here the contents of the telephone call, if admitted, would describe specifically that which was precluded in *Cruz,* the particular conduct of the defendant.

The trial court relied on this distinction in denying the state's request to introduce the contents of the telephone call. The trial court, however, reaffirmed its earlier decision and allowed the state to introduce the fact that "there was information received from unidentified informants that led them to a particular place because of some type of activity which was going on there."

On direct examination, the state established that Lyons had received a telephone call regarding some illegal activity and had gone to 139 Homestead Avenue to perform a surveillance in response to that telephone

---

[4] The state conceded that this evidence would not be admissible as a business record because there was no duty on the caller to make the telephone call.

call. Shortly thereafter, the witness was asked why he went to 139 Homestead Avenue. He responded that he "was there to check out information [he] had received concerning a specific person who was selling narcotics from a parked vehicle." No objection was made to this question nor did the defendant move to strike the response. The witness was asked numerous foundational questions concerning his familiarity with the area around 139 Homestead Avenue. The state then asked him to describe the individuals he saw during the course of his surveillance. The witness briefly described the activity of four individuals and then stated that he was "focused on the person [he] had received information on." The state's attorney then cautioned the witness not to testify as to the contents of the telephone call. At this point, defense counsel objected to the testimony and requested argument outside the presence of the jury.

Defense counsel moved to dismiss the charges against the defendant or, in the alternative, for a mistrial on the ground that the state had violated the trial court's order regarding the introduction of the contents of the telephone conversation. The trial court denied the defendant's motion. With respect to the first reference, the trial court noted that it came in without objection; with respect to the second, the court did not find "that the comments to which the objections were made was sufficiently specific with regard to the telephone call to be violative of either the words or the spirit of the court's order." The trial court did, however, instruct the jury to disregard the testimony relating to the telephone call.

We will not review the defendant's claim as it relates to the witness' comment regarding a specific person selling narcotics from a parked vehicle because the defendant has failed to preserve this claim properly for appellate review. Absent a timely objection, this claim

is not reviewable. *State* v. *Anderson,* 212 Conn. 31, 41, 561 A.2d 897 (1989); *State* v. *Plourde,* 208 Conn. 455, 462, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989). Only the most exceptional circumstances will save a claim from the fatal consequences of a defendant's failure to make a timely objection. *State* v. *Reddick,* 197 Conn. 115, 125, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). The defendant has suggested no exceptional circumstances to warrant departure from the general rule that limits appellate review of all issues to those on which the trial court has had an opportunity to rule. *Knight* v. *Bourbeau,* 194 Conn. 702, 704 n.3, 485 A.2d 919 (1984). The second claim, addressing Lyons' comment that he was "focused on the person [he] had received information on" was properly preserved by the defendant's timely objection and subsequent exception.

Due process requires that a criminal defendant be given a fair trial before an impartial jury. U.S. Const., amend XIV; Conn. Const., art. 1, § 8. *State* v. *Brigandi,* 186 Conn. 521, 542, 442 A.2d 927 (1982). A new trial, however, is not required every time " 'a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.' " *Rushen* v. *Spain,* 464 U.S. 114, 118, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983), quoting *Smith* v. *Phillips,* 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. *State* v. *Hancich,* 200 Conn. 615, 624–25, 513 A.2d 638 (1986); *State* v. *Gaston,* 198 Conn. 490, 495–96, 503 A.2d 1157 (1986); *State* v. *Ubaldi,* 190 Conn. 559, 562, 464 A.2d

1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). The trial court enjoys wide discretion in deciding whether a mistrial is warranted; *Speed* v. *DeLibero,* 215 Conn. 308, 315, 575 A.2d 1021 (1990); *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982); and its evaluation as to events occurring before the jury is to be accorded the highest deference. *United States* v. *Grasso,* 600 F.2d 342, 343 (2d Cir. 1979). Every reasonable presumption will be given in favor of the trial court's ruling; *State* v. *Rodriguez,* 10 Conn. App. 176, 179, 522 A.2d 299 (1987); because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. See, e.g., *United States* v. *Wiley,* 846 F.2d 150, 157 (2d Cir. 1988); *State* v. *Asherman,* 193 Conn. 695, 736, 478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. *State* v. *Rodriguez,* 210 Conn. 315, 326, 554 A.2d 1080 (1989); *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

The trial court is well aware of the scope of its orders. We, therefore, must afford great deference to its conclusion that the state did not violate either the words or spirit of those orders. Moreover, even though the trial court concluded that the state's attorney did not violate the order regarding the introduction of the contents of the telephone call, it nonetheless instructed the jury to disregard any and all testimony relating to the telephone conversation. We cannot say that the con-

duct at issue, after the countermeasures administered by the court, so jeopardized the defendant's right to a fair trial that the trial court abused its discretion in denying his motion for a mistrial. The defendant's right to a fair trial was more than adequately protected and his claim to the contrary must fail.

## II

The defendant next claims that a pattern of conduct repeated throughout the course of the trial and the state's closing argument constituted prosecutorial misconduct that violated his right to a fair trial. U.S. Const., amend XIV; Conn. Const., art. 1, § 8. The challenged conduct falls into three general categories: (1) asking the defendant to characterize the testimony of the police as incorrect and arguing to the jury that either the police officers' testimony or the defendant's testimony was untrue; (2) questions referring to prior phone calls to the police regarding drug activity and drug arrests in the area of the defendant's arrest; and (3) questions asked of the defendant regarding the registration of the car in which the drugs were found. The defendant claims that each of these actions independently constitutes prosecutorial misconduct requiring reversal of his convictions, and, alternatively, that even if each alone does not justify reversal, their cumulative effect requires reversal. See *Floyd* v. *Meachum,* 907 F.2d 347 (2d Cir. 1990).

Prosecutorial misconduct may occur in the course of cross-examination of witnesses; *State* v. *Hafner,* 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975); or in the course of closing argument. *State* v. *Pelletier,* 196 Conn. 32, 33–34, 490 A.2d 515 (1985); *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). " '[T]he touchstone of [our] analysis in cases of alleged prosecutorial

misconduct is the fairness of the trial, not the culpability of the prosecutor.' *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 489, 442 A.2d 1320 (1982)." *State* v. *Couture,* supra, 562; *State* v. *Palmer,* 196 Conn. 157, 163, 491 A.2d 1075 (1985). We must, therefore, determine whether the state's attorney's questions and comments, in light of all the circumstances, were so egregious and so damaging to the defendant that they deprived him of a fair trial. *State* v. *Couture,* supra, 562–63. Applying the established rules to the case before us, we conclude that the defendant falls short of demonstrating an entitlement to a new trial.

## A

### CHARACTERIZATION OF TESTIMONY

The defendant did not object to the questions regarding the discrepancy between his testimony and the detectives' testimony, or to references to these differences made by the state's attorney during his summation. He, therefore, failed to preserve this claim properly for review. An unpreserved claim of prosecutorial misconduct merits reversal only where the conduct complained of constitutes a "pattern of repeated, strident and serious misconduct," not where the conduct is comprised of "isolated and brief episodes." *State* v. *Smith,* 209 Conn. 423, 428, 551 A.2d 742 (1988). Moreover, a pattern of blatantly egregious conduct must "rise to the level of character assassination and vitriolic personal attacks . . . [in order] to constitute a denial of the constitutional due process right [and] fair trial." *State* v. *Rogers,* 207 Conn. 646, 654, 542 A.2d 1136 (1988).

Although our Supreme Court has disapproved of asking one witness to characterize the testimony of another witness, such action does not automatically result in prejudicial error. See *State* v. *Schleifer,* 102 Conn. 708,

723, 130 A. 184 (1925). This is so, particularly in a case where the central issue is one of credibility and the trial court has properly instructed the jury that it is to evaluate the credibility of the witnesses independently and weigh their testimony, as was the case here. In such a case, characterization of testimony by a witness does not deprive the jury of its essential fact finding function. Cf. *Commonwealth* v. *Ward,* 15 Mass. App. 400, 401–402, 446 N.E.2d 89 (1983), and *People* v. *Dowd,* 101 Ill. App. 3d 830, 844, 428 N.E.2d 894 (1981).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court], in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . [and] the strength of the curative measures adopted . . . ." (Citations omitted.) *State* v. *Williams,* 204 Conn. 523, 540, 529 A.2d 653 (1987).

Here, the detectives testified during the state's case-in-chief that they had apprehended the defendant after observing him make numerous trips to a parked car, approach various individuals and hand them small plastic packages in exchange for money. The defendant testified that he had been playing dominoes at the time he was apprehended. Twice during the cross-examination, the state questioned the defendant about the apparent inconsistency in his testimony compared with that of the detectives.[5] Additionally, during closing arguments both the state and the defendant referred to the dis-

---

[5] The following colloquy occurred:

"Q. And it's your testimony here today the police officers are wrong in their testimony.

parity between the defendant's testimony and the detectives' testimony and inferred that one of the two versions of the events was inaccurate.[6]

"A. They are wrong, sir.
"Q. Do you know any reason why, sir, they should testify—
"A. I don't know, but they are wrong.

\* \* \*

"Q. And the testimony of all those police officers, according to you, is incorrect?
"A. Yes, sir, because they all plan what to say, sir.
"Q. So, basically, the testimony of those police officers from different positions is incorrect?
"A. It's not true, sir.
"Q. Not true
"A. Not true.
"Q. Do you know of any reason why they should make an untrue statement?
"A. I guess because they say I got the money, that's why."

[6] During his initial closing argument, the state's attorney made the following two references to the conflicting testimony of the police officers and the defendant:

"You have testimony of police officers as to a specific event. You have testimony by defense, by the defendant himself, by defense witnesses and that testimony is in conflict."

"The four police officers testified to a vehicle in a very specific location. The testimony of the defendant . . . [was that] he pulled into that driveway and he parked the vehicle. So, the confrontation. Whose testimony is to be believed."

During his closing argument, defense counsel made the following comments:

"I submit to you there is some conflict in the testimony of the police officers . . . and [the state's attorney] asked you to try to determine who's telling the truth and who's not telling the truth. I join in that request."

"We think the entire case is based on credibility. Who's telling the truth and who's not telling the truth."

"[A]nd the question I submit to you, ladies and gentlemen, is have you been convinced beyond a reasonable doubt that these two officers were telling the whole truth. The whole truth."

"Now you might ask yourself why would Detectives Lyons and Battistone say something if it wasn't true."

"So, you might consider, ladies and gentlemen, that the motive Detectives Lyons and Battistone might have for not telling you the entire truth is that they want to make an arrest that sticks."

In his rebuttal argument, the state's attorney commented as follows:

After a thorough examination of the record we conclude that the prosecutor's comments during closing argument were invited by the defendant; the reference to the differences in the testimony of the detectives and the defendant during cross-examination of the defendant were comprised of two isolated incidents, and thus were neither serious nor frequent. We further conclude that any harm that may have arisen was overcome by the trial court's proper instructions to the jury. Thus, the defendant's argument must fail.

## B

### PRIOR PHONE CALLS TO THE POLICE

The defendant next claims that the state injected "ugly innuendo" into the trial by improperly evoking testimony from its witnesses about two prior telephone calls regarding drug activity and arrests in the area where the defendant was arrested and thereby deprived him of his right to a fair trial. Simply stated, the defendant has placed a constitutional tag on a nonconstitutional issue. *State* v. *Smith,* 219 Conn. 160, 165, 592 A.2d 382 (1991); *State* v. *Castonguay,* 218 Conn. 486, 504, 590 A.2d 901 (1991); *State* v. *Walker,* 215 Conn. 1, 5, 574 A.2d 188 (1990). The admission of testimony is an evidentiary ruling. See *State* v. *Gold,* 180 Conn.

---

"[Defense counsel's] main thrust . . . on behalf of [the defendant] . . . is the credibility of the police officers. He's using the word untruthful. . . . Basically, he's implying by the word that the police officers are untruthful in their testimony. . . . Well, if [they're] being untruthful . . . then why didn't they just be totally untruthful? Why didn't they just put the drugs on Mr. Harvey; put a different amount of money involved in the case or no money at all and pocket the money . . . . If we're going to have an untruth here, then let's make it a good untruth. Let's be totally untruthful. . . . If you're going to be untruthful, be totally untruthful. Let's not make it a little untruth. . . . What reason do four police officers have to lie? Does the defendant have a reason to lie? Does the defendant's witness have a reason to lie? . . ."

"[I]t comes down to do you believe the police officers' testimony or are you going to believe Mr. Harvey's testimony, and Mr. Harvey's witness."

619, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). Unpreserved nonconstitutional claims such as this "do not warrant special consideration simply because they bear a constitutional label." *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because the admission of this testimony was an evidentiary ruling, the defendant bears the burden of establishing that the admission of the testimony was harmful. *State* v. *Gold,* supra, 640. The defendant has not met that burden. The testimony regarding earlier phone calls relating narcotics activity was introduced for the sole purpose of justifying why the police credited the telephone call they received on the night the defendant was apprehended and why they felt a surveillance of the area was warranted.[7] Because the defendant failed to demonstrate that he was harmed by these statements, his claim must fail.

## C

### PRIOR CRIMES OR UNCHARGED MISCONDUCT

The defendant filed a motion in limine regarding the admissibility of evidence of prior crimes or uncharged misconduct by the defendant. The trial court ruled that the state must give the court notice of its intent to introduce such evidence prior to its introduction. On cross-examination, the defendant was asked a series of questions concerning the car in which the drugs were found. He stated that the car was owned by and registered to his cousin, and that he, the defendant, had taken the car to the department of motor vehicles and registered it in his cousin's name. He was then asked if he had signed the papers in someone else's name. Defense counsel objected on the grounds that the question was

---

[7] The defendant also claims that the state's attorney, in closing argument, improperly referred to the telephone call received on the day of the defendant's arrest. Because of our conclusion in the first issue, we need not review this claim.

irrelevant and that it exceeded the scope of direct examination. Outside the presence of the jury, the court, referring to its ruling on the introduction of acts of uncharged misconduct, concluded that the question was *approaching* that direction. The state argued that the question was asked for purposes of impeachment only, but agreed to withdraw the question. The trial court instructed the jury that it was to disregard the unanswered question and was not to consider the matter during deliberation.

The trial court interpreted its order regarding the admissibility of evidence of uncharged misconduct to cover only the intentional introduction of evidence of such conduct. The trial court concluded that the state did not intentionally introduce this evidence and, consequently, that the state did not violate its orders. Moreover, the trial court's declaration that this question was "approaching" the forbidden territory indicates that the court was of the belief that the state had not yet reached that realm. Finally, we must assume that the jury followed the trial court's directive not to consider the evidence of this uncharged misconduct. *State* v. *Rouleau,* 204 Conn. 240, 254, 528 A.2d 343 (1981); *State* v. *Jupin,* 26 Conn. App. 331, 350, 602 A.2d 12 (1992). Therefore, the defendant's argument fails.

## D

### CUMULATIVE EFFECT

The defendant alternatively argues that the cumulative effect of the acts complained of was sufficient to warrant reversal of his convictions. We disagree. Because we find that none of the challenged trial court actions was improper, we conclude that the cumulative impact of those actions did not deny the defendant a fair trial. *State* v. *Harris,* 182 Conn. 220, 230–33, 438 A.2d 38 (1980); *State* v. *Hudson,* 14 Conn. App. 463,

472, 541 A.2d 534 (1988); *State* v. *Robinson,* 14 Conn. App. 146, 149–51, 539 A.2d 1037, cert. denied, 208 Conn. 805, 545 A.2d 1101 (1988).

## III

The defendant's third claim challenges the propriety of the trial court in permitting Lyons to testify as both a fact witness and an expert witness.[8] At trial, the defendant objected to the state's attempt to have Lyons testify as an expert witness with respect to narcotics investigations and procedures on the ground that the detective's proposed testimony went to the ultimate issue in the case.[9] The trial court overruled the defendant's objection and determined that Lyons was qualified to testify as an expert. The defendant did not claim that the detective should not have been permitted to testify as both a fact witness and an expert witness. Because this claim was never raised at trial, we decline to review it.

This court will not review issues of law that are raised for the first time on appeal. Practice Book § 4185; *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 460, 538 A.2d 1017 (1988). To allow the defendant to argue one theory of inadmissibility at trial and then press a distinctly different theory on appeal would amount to an ambuscade of the trial court. See *State* v. *King,* 216 Conn. 585, 590, 583 A.2d 896 (1990); *Crotty* v. *Naugatuck,* 25

---

[8] The defendant does not challenge the propriety of the trial court in allowing any of the other police officers to testify as both fact witnesses and expert witnesses.

[9] Defense counsel argued: "Your Honor, Detective Lyons' proposed testimony goes to the ultimate issue in the case. He is the arresting officer. I submit that to allow him to give an opinion in this matter as to drug transactions, what was going on, I submit would certainly be extremely prejudicial to this defendant. He certainly has an interest in this matter because he was the arresting officer and I submit that the proposed—the testimony that I anticipate to be elicited by [the state's attorney] will go to the ultimate issue in this case. I submit that Detective Lyons should not be allowed to give an opinion in this matter."

Conn. App. 599, 602, 595 A.2d 928 (1991); *State* v. *McFadden,* 25 Conn. App. 171, 172 n.1, 593 A.2d 979, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991).

## IV

Finally, the defendant, in a series of claims addressed to the trial court's charge to the jury, argues that the trial court improperly instructed the jury on (1) expert testimony, (2) the presumption of innocence, and (3) reasonable doubt. Specifically, the defendant argues that the trial court's instruction on expert testimony was prejudicially misleading and that the instructions on reasonable doubt and the presumption of innocence violated his fourteenth amendment right to due process, his federal and state constitutional rights to a fair trial and his right to effective assistance of counsel. The defendant concedes that these claims were not properly preserved and seeks review under the plain error doctrine of Practice Book § 4185,[10] or, alternatively, under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* supra.

The defendant's claims do not rise to the level of plain error. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings; *State* v. *Ralph,* 17 Conn. 247, 249, 551 A.2d 774 (1989), quoting *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); and results in an unreliable verdict or miscarriage of justice. *Barca* v. *Barca,* 15 Conn. App. 604, 606, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988)." (Internal quotation marks omitted.) *State* v. *Polanco,* 26 Conn. App. 33, 39, 597 A.2d 830,

---

[10] Practice Book § 4185 provides in pertinent part: "The [appellate] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The [appellate] court may in the interest of justice notice plain error not brought to the attention of the trial court."

cert. denied, 220 Conn. 926, 598 A.2d 367 (1991). These claims do not raise such issues; thus, plain error review is not warranted.

## A

### EXPERT TESTIMONY

The defendant first challenges the trial court's instruction on expert testimony on the ground that the instruction was prejudicially misleading.[11] Although no objection was made at trial, we will review this claim because it meets all four prongs of *State* v. *Golding,* supra. The defendant argues that the trial court's directive that the jury consider the qualifications of the expert did not meet the required standard that expert testimony is to be considered, weighed and tested like any other testimony. *State* v. *Kelly,* 77 Conn. 266, 275, 58 A. 705 (1904).

In reviewing a challenge to jury instructions, we must examine the charge in its entirety. *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989). While the instructions need not be exhaustive, perfect or techni-

---

[11] The trial court instructed as follows: "In this particular case, certain witnesses have gone on the stand and given their qualifications and testified as expert witnesses. A person is qualified to testify as an expert if he has special knowledge, skill, experience, training or education sufficient to qualify him as an expert on the subject to which his testimony relates. An expert is permitted not only to testify to facts which he personally observed but also, to state his opinion upon certain circumstances or about certain circumstances. This is allowed because an expert is supposed—from his knowledge, research and study—to have a particular knowledge of the subject of the inquiry and be more capable than a lay person of drawing conclusions from facts and basing his opinion upon that. Such testimony is presented to you to assist you in your deliberations. No such testimony is binding upon you, however, and you may disregard such testimony, either in whole or in part. It is for you to consider the testimony with the other circumstances in the case and using your best judgment, determine whether or not you will give any weight to it and if so, what weight you will give to it. *The testimony is entitled to such weight as you find the expert's qualifications in his field entitle it to receive.* It must be considered by you but is not controlling on your judgment." (Emphasis added.)

cally accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991). The challenged portion of the instruction, taken in the context of the entire charge, was proper.

First, it immediately followed the trial court's instructions that that testimony was not binding and that the jury was free to disregard the expert testimony, either in whole or in part. The court also instructed that it was for the jury to consider the testimony with the other evidence presented and it was the jury's responsibility to determine the weight to be given to the expert testimony. Second, this challenged portion was immediately followed by the trial court's admonition that the evidence must be considered by the jury but that it was not bound to accept it. Thus, contrary to the defendant's assertion, the trial court did not "[indicate] as a given the truth of the underlying facts."

Moreover, an examination of the trial court's charge, in its entirety; *State* v. *Grullon,* supra; defeats the defendant's claim. The court instructed the jury that it was the sole judge of the facts, that it was to weigh the evidence and to form an independent conclusion of what the facts were and that it was to judge the credibility of the witnesses. Even more significant is the fact that the court instructed the jury that the credibility of the police officers, all of whom testified as experts, was to be weighed by the same standards as the testimony of ordinary witnesses. After reading and considering the charge as a whole, we conclude that the jury was properly appraised of the standard by which it was to evaluate the expert testimony adduced at trial and that it is not reasonably possible that the jury was misled by the trial court's instruction.

## B

### THE PRESUMPTION OF INNOCENCE

The defendant's next claim is that the trial court's instructions on the presumption of innocence violated his due process rights.[12] U.S. Const., amend XIV; Conn. Const., art. 1, § 8. The defendant relies on the recent decision of the United States Court of Appeals for the Second Circuit in *Floyd* v. *Meachum, supra.* We conclude that the defendant's reliance on that case is misplaced and that this case is controlled by the decision of our Supreme Court in *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990).

In *Floyd* v. *Meachum,* supra, the Second Circuit reversed the defendant's convictions and concluded that "the prosecutor's *repeated* remarks that the Fifth Amendment was 'a protection for the innocent' and not 'a shield' for 'the guilty' incorrectly stated the law by

---

[12] The trial court charged on the presumption of innocence as follows: "On the subject of presumption of innocence . . . the defendant is presumed innocent until proven guilty beyond a reasonable doubt. This presumption of innocence was with the defendant when he was first presented for trial in this case. It continues with him throughout the trial. As far as you are concerned, the defendant is innocent and he continues to be innocent unless and until such time as all the evidence produced here in the orderly conduct of this case, considered in light of these instructions of law and deliberated upon by you in the jury room, satisfy you beyond a reasonable doubt that he is guilty. Thus, the presumption of innocence alone is sufficient to acquit the defendant. The presumption remains with the defendant throughout the trial unless you are satisfied beyond a reasonable doubt of the defendant's guilt from all the evidence in the case.

"It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with crime by respecting the presumption of innocence which the law imputes to every person so charged and by making the state meet its burden of proving guilt beyond a reasonable doubt *but you must keep in mind that those rules of law are made to protect the innocent and not the guilty.* If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it is your sworn duty to enforce the law and render a verdict of guilty." (Emphasis added.)

diluting the State's burden of proof beyond a reasonable doubt and undermining the presumption of innocence." (Emphasis added.) Id., 354. It was the constant repetition throughout the prosecutor's comments that the court relied on in concluding that the effect was to dilute the state's burden of proof and to undermine the presumption of innocence. Here, unlike in *Floyd,* it was stated only once that the purpose of the fifth amendment was to protect the innocent and not to shield the guilty. Thus, the facts in *Floyd* v. *Meachum,* supra, render the court's conclusion there inapplicable to the present case.

We are bound by our Supreme Court's decision in *State* v. *Thomas,* supra. The *Thomas* court declined to review under *State* v. *Evans,* supra, and *State* v. *Golding,* supra, a challenge to language similar to the language challenged here, noting that jury instructions containing similar statements had been approved in the past.[13] The court held that when viewed in the context of the entire charge, the language did not dilute the presumption of innocence or lessen the state's burden of proof, but that the court's charge, in its entirety, adequately informed the jury that the defendant was presumed innocent until the state proved otherwise. The Supreme Court also found that the trial court adequately informed the jury that it was the state's burden to prove the defendant guilty beyond a reasonable doubt. *State* v. *Thomas,* supra, 119–20. On the basis of these findings, the Supreme Court concluded that there was no clear deprivation of a fundamental constitutional right. *State* v. *Golding,* supra, 240–41. The

---

[13] See *State* v. *Brown,* 199 Conn. 14, 28, 505 A.2d 690 (1986); *State* v. *Leecan,* 198 Conn. 517, 538–39, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 660 (1986); *State* v. *Findlay,* 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Palmer,* 196 Conn. 157, 168–69, 491 A.2d 1075 (1985); *State* v. *Just,* 185 Conn. 339, 353, 441 A.2d 98 (1981).

same reasoning applies in this case. We, therefore, conclude that the defendant's due process rights were not violated.

## C

### REASONABLE DOUBT

The defendant's final claim concerns the trial court's instruction on reasonable doubt. He claims that the trial court's instruction to the jury that reasonable doubt "is not a doubt which is raised by the ingenuity of counsel" violated his rights to counsel[14] and to a fair trial as guaranteed by both the federal and state constitutions.[15] U.S. Const., amends. VI and XIV; Conn. Const., art. 1, § 8. We disagree.

"In a criminal case, the trial court must instruct the jury on the constitutional requirement that the state prove the defendant's guilt beyond a reasonable doubt. *State* v. *DelVecchio,* 191 Conn. 412, 420, 464 A.2d 813 (1983). ' "[C]ourts . . . [should] not use language in instructions which can be understood as diluting or in any way impairing the constitutional requirement of proof beyond a reasonable doubt." *United States* v.

[14] Although the defendant phrased this claim as a denial of the right to effective assistance of counsel, we conclude that he is effectively claiming that he was denied his right to counsel.

[15] The trial court charged the jury on reasonable doubt as follows: "A reasonable doubt means this. It is a doubt for which a person can give a valid reason. The burden of proving his guilt beyond a reasonable doubt requires the state to produce sufficient evidence to create in your mind a strong and abiding conviction of the guilt of the accused. In other words, it is the law that the evidence must be so sufficient that it would leave no room in your mind for any reasonable hypothesis of the innocence of the accused.

"A reasonable doubt is not a doubt raised by one who questions for the sake of raising a doubt. *A reasonable doubt is not a surmise or speculation, conjecture or an imaginary doubt, nor a doubt which is raised by the ingenuity of counsel or by a juror and unwarranted by the evidence.* Nor is it a doubt prompted by sympathy for the accused. A reasonable doubt is a real doubt, an honest doubt, a doubt which has its foundation in the evidence offered in the case or lack of evidence." (Emphasis added.)

*Pine,* 609 F.2d 106, 108 (3d Cir. 1979).' *State* v. *Smith,* 183 Conn. 17, 28, 438 A.2d 1165 (1981). It is well established that the test to be applied in appellate review to a claim of instructional error is whether the charge as a whole presented the case to the jury so that no injustice has been done. *State* v. *Lytell,* 206 Conn. 657, 664, 539 A.2d 133 (1988); *State* v. *Moss,* 189 Conn. 364, 370, 456 A.2d 274 (1983); *State* v. *Derrico,* 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)." *State* v. *Lamme,* 19 Conn. App. 594, 607, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990).

This court and our state Supreme Court have permitted *Evans-Golding* review of similar claims that certain language used in the charge in a criminal case had the effect of diluting the state's constitutional burden to prove a defendant guilty beyond a reasonable doubt. *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990); *State* v. *Lamme,* supra; *State* v. *Lytell,* supra; *State* v. *Smith,* 26 Conn. App. 279, 600 A.2d 1036 (1991). Accordingly, we review this claim to determine whether the defendant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Golding,* supra; *State* v. *Evans,* supra.

After instructing the jury on the presumption of innocence and instructing that the state bore the burden of proving each and every element of the crimes charged, the trial court charged the jury on reasonable doubt. The language used by the trial court in defining proof beyond a reasonable doubt, specifically, that proof beyond a reasonable doubt is not "a doubt which is raised by the ingenuity of counsel" is not language that dilutes the state's burden of proof, nor is it language that implies the jury should disregard defense counsel's argument or accord it minimal consideration. Cf. *United States* v. *Brown,* 776 F.2d 397 (2d Cir. 1985), cert. denied, 475 U.S. 1141, 106 S. Ct. 1793, 90 L. Ed.

2d 339 (1986).[16] The challenged portion of the trial court's instruction was part of a extensive instruction on reasonable doubt that has been previously approved by our state appellate courts. See *State* v. *Lamme,* supra; *State* v. *Johnson,* supra; *State* v. *Ryerson,* 201 Conn. 333, 514 A.2d 337 (1986); *State* v. *Lytell,* supra; *State* v. *Smith,* 210 Conn. 132, 554 A.2d 713 (1989); *State* v. *Findlay,* 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d (1986); *State* v. *Smith,* supra, 26 Conn. App. 279; *State* v. *Turner,* 24 Conn. App. 264, 587 A.2d 1050 (1991); *State* v. *Diorio,* 12 Conn. App. 74, 529 A.2d 1320, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987), cert. denied, 484 U.S. 1065, 108 S. Ct. 1025, 98 L. Ed. 2d 990 (1988). The defendant's burden with respect to this final claim is thus " 'especially heavy because no erroneous instruction was given.' " *State* v. *Kurvin,* 186 Conn. 555, 563, 442 A.2d 1327 (1982), quoting *Henderson* v. *Kibbe,* 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). We conclude that the trial court adequately informed the jury that the state was required to establish the defendant's guilt beyond a reasonable doubt; *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); and, therefore, that the defendant was not deprived of his right to counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] The First Circuit has examined language similar to the language challenged in the present case and has yet to find that such language constitutes reversible error where it is included in an otherwise proper instruction. *United States* v. *Barnes,* 890 F.2d 545, 553–54 (1st Cir. 1989); *United States* v. *Glantz,* 847 F.2d 1, 11 (1st Cir. 1988); *United States* v. *Glenn,* 828 F.2d 855, 861 (1st Cir. 1987).