STATE OF CONNECTICUT *v.* CLIFTON CHANNER
(10233)

DUPONT, C. J., NORCOTT and LAVERY, Js.

Argued April 28—decision released July 7, 1992

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Paul Murray,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4). He was sentenced to twenty years imprisonment on each charge, to be served consecutively to a sentence he currently is serving in federal prison.

On appeal, the defendant claims that the trial court (1) improperly denied his motions for judgment of acquittal because of evidentiary insufficiency, (2) improperly instructed the jury on an essential ele-

ment of the crime of robbery in the first degree, and (3) improperly instructed the jury on an essential element of the crime of conspiracy to commit robbery in the first degree. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. Delroy Lewis was driving his car on Sigourney Street in Hartford accompanied by his fiancee, Dawn Jones, on June 12, 1988. At a traffic light, a car pulled up on the passenger side of Lewis' vehicle. The defendant was a passenger in the second car. When the light changed, the defendant's car swerved in front of Lewis' and for the next few blocks continued swerving near Lewis' car. The driver of the second car was never identified.

During this time, Jones saw a gun pointed at her from the defendant's car, although she was uncertain whether it was the driver or the defendant who pointed it at her. Lewis did not see the gun during the time the defendant's car was swerving close to his. At a traffic light farther along the road, the driver of the second car left his vehicle and told Lewis that he was going to shoot him. Lewis then turned his car onto another street. At this point, the driver of the other car returned to his vehicle and again swerved in front of Lewis' car, blocking it. Jones got out of Lewis' car to ask the defendant and the other driver why they were behaving as they did.

The other driver got out of his vehicle again, armed with a gun, and said that he was going to shoot Lewis. He approached Lewis' car and kicked the door. Lewis saw the gun and maneuvered his vehicle around the other car and drove away, leaving Jones at the scene. Lewis stopped his car a short distance away. He was followed by the defendant and the unidentified driver in the other car. Jones screamed and began running toward Lewis. The defendant and the driver both got

out of their vehicle and approached Lewis. Lewis got out of his car. The driver of the other vehicle, who at this point did not have a gun, then punched Lewis in the face. During a scuffle that ensued, a ring Lewis was wearing was either pulled off by the other driver or fell off. Lewis was unable to find it later.

During the scuffle, Lewis heard the other driver order the defendant to "bring the gun" from the car. The defendant then approached with the gun and asked the driver to move because he was between the defendant and Lewis. When Lewis saw the weapon, he fled toward a parking lot. Moments later, he looked back and saw both men driving away. The defendant was driving Lewis' car. Lewis then ran to Jones saying, "They stole my car."

At the conclusion of the state's case-in-chief, the defendant moved for judgment of acquittal. He also moved for judgment of acquittal after all of the evidence had been presented and again at his sentencing. The trial court denied all three motions. This appeal followed.

## I

### SUFFICIENCY OF THE EVIDENCE

The defendant first claims that the trial court improperly denied his motions for acquittal because there was insufficient evidence to support his convictions. We disagree.

When reviewing a claim of evidentiary insufficiency, we employ a two part test. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. Next, we determine whether, on the facts so construed and the inferences reasonably drawn therefrom, the jury could have concluded that the cumulative force of the evidence established the defendant's guilt beyond a rea-

sonable doubt. *State* v. *Lewis,* 220 Conn. 602, 606, 600 A.2d 1330 (1991); *State* v. *Jupin,* 26 Conn. App. 331, 337, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). In determining if the jury reasonably could have found the defendant guilty, we ask if any rational factfinder could have done so. *State* v. *Montanez,* 219 Conn. 16, 20, 592 A.2d 149 (1991); *State* v. *Jupin,* supra, 338.

## A

The defendant first attacks the sufficiency of the evidence that resulted in his conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] He argues, in essence, that the state failed to prove beyond a reasonable doubt that he used or threatened immediately to use physical force to prevent Lewis from resisting the taking of his car. In the defendant's view, the force or the threat of force he exhibited had nothing to do with the loss of Lewis' ring or the taking of his car. Thus, there was no robbery.

"Robbery is an offense against the person, the distinguishing characteristic of which is the intimidation of the victim." *State* v. *Hawthorne,* 175 Conn. 569, 573, 402 A.2d 759 (1978); *State* v. *Childree,* 189 Conn. 114, 123, 454 A.2d 1274 (1983). Under the plain language of General Statutes § 53a-133,[2] a criminal defendant

---

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] General Statutes § 53a-133 provides: "ROBBERY DEFINED. A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

"commits robbery when, in the course of committing a larceny," he engages in forcible conduct with a proscribed purpose. *State* v. *Tweedy,* 219 Conn. 489, 498, 594 A.2d 906 (1991). A larceny does not constitute a robbery unless the force or threat of force is for the purpose of coercing the victim in the manner described in § 53a-133. *State* v. *Gordon,* 185 Conn. 402, 410–11, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982). The term "purpose" is synonymous with the terms "object" and "intent." *State* v. *Kurvin,* 186 Conn. 555, 567, 442 A.2d 1327 (1982). Intent may be determined from the inferences drawn from the defendant's conduct; *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984); because " '[i]ntent is a mental process which ordinarily can be proven only by circumstantial evidence.' " *State* v. *Tweedy,* supra, 501, quoting *State* v. *Just,* 185 Conn. 339, 355, 441 A.2d 98 (1981).

With respect to the defendant's assertion that his robbery conviction cannot be based on the larceny of the ring, this is not in dispute because the jury was not instructed as to accessory liability. Rather, it was instructed that it had to find that it was the defendant who, in the course of committing a larceny, threatened the immediate use of physical force against Lewis so as to prevent him from resisting the taking of his personal property. See *State* v. *Tweedy,* supra. Thus, the jury had to consider the theft of the car as the larceny giving rise to the robbery charge.

The evidence clearly demonstrates that the defendant and his companion engaged in a continuing course of conduct that included swerving their automobile to impede Lewis' car, cutting him off, and threatening him by brandishing a gun as the cars proceeded along Sigourney Street. When the defendant finally got out of the car to bring his companion a gun, the defendant further threatened Lewis with the use of force by

requesting the unidentified driver to move so there would be a clear path between Lewis and the gun the defendant was carrying. At this point, Lewis fled and looked back to see the defendant driving away in his car.

Viewing the evidence in the light most favorable to sustaining the jury's verdict, as we must, we conclude that sufficient evidence existed to find beyond a reasonable doubt that the defendant's display of the gun and his request that his companion move were intended to prevent Lewis from resisting the taking of his car. *State* v. *Gordon,* supra, 411. Although the defendant argues that the taking of the car was only a larceny because the threat of force ended when Lewis fled, such is not the case. Inherent in the defendant's reasoning is the mistaken assumption that the use of force or the threatened use of force must occur simultaneously with the taking of the property for the force or threat of force to be for the purpose of preventing resistance. The time frame for committing the offense of robbery, however, is " 'the course of committing a larceny,' " rather than the course of forcible conduct. *State* v. *Tweedy,* supra, 498–99; *State* v. *Gordon,* supra, 410–11. "An offender . . . may commit robbery although he does not use or threaten to use force *at the precise time* he takes the property . . . ." (Emphasis added.) *State* v. *Gordon,* supra; *State* v. *Tweedy,* supra, 499 n.10. With the facts here, it was entirely reasonable for the jury to conclude that the defendant threatened Lewis for the purpose of preventing resistance to the taking of the car.

## B

The defendant next challenges the sufficiency of the evidence that led to his conviction of conspiracy to commit robbery in the first degree in violation of

§§ 53a-48 (a)[3] and 53a-134 (a) (4). He argues that the state lacked the evidence necessary to prove that he entered into a plan to commit the crime of robbery in the first degree, or that he intended to use force to commit the underlying larceny of Lewis' car.

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . ." (Internal quotation marks omitted.) *State* v. *Lewis,* supra, 606–607, quoting *State* v. *Beccia,* 199 Conn. 1, 3, 505 A.2d 683 (1986). Further, the state also must show that the conspirators intended to agree and that they intended to commit the elements of the underlying offense. *State* v. *Beccia,* supra, 4. Thus, to convict the defendant, the jury had to find (1) that the defendant agreed with his companion to take Lewis' car, (2) that, at the time of the agreement, the defendant and his companion intended to take the car, and (3) that the defendant or his companion committed an overt act in furtherance of the conspiracy. To prove that there was an agreement, it is well established that circumstantial evidence is sufficient because conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence. *State* v. *Holmes,* 160 Conn. 140, 150, 274 A.2d 153 (1970); see also *State* v. *Ghere,* 201 Conn. 289, 299, 513 A.2d 1226 (1986) ("existence of a formal agreement

---

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

between the conspirators need not be proved" because only in rare instances can a conspiracy be established by proof of an express agreement).

Here, the evidence clearly demonstrates that the entire chain of events, including the swerving of the car, the blocking of Lewis' car, and the use of a gun by the defendant and his request to his companion to move out of the way so that he was not between Lewis and the gun, could be seen as intentional conduct supporting the existence of a plan to take Lewis' car. Further, the defendant's overt acts of bringing the gun to his companion and driving away with Lewis' car constitute acts in furtherance of the conspiracy to take the car. Although the defendant at oral argument suggested that "the taking of the vehicle was a larcenous and fortuitous afterthought to what went before," we cannot agree. Under the circumstances here, it was reasonable and logical for the jury to infer that the defendant and his companion agreed to take Lewis' car, that they intended to do so and that they committed overt acts to that end.

## II

### CHALLENGE TO JURY INSTRUCTIONS

### A

The defendant next contends that the court, in its instructions to the jury, improperly defined an essential element of the crime of robbery in the first degree. Specifically, he argues that, in response to the jury's requests for clarifications of the court's charge, the court improperly defined the phrase in § 53a-134 (a) (4) "in the course of the commission of the crime," thereby violating his state and federal constitutional rights not to be convicted except upon proof beyond a reasonable doubt of each element of the offense charged. We are unpersuaded.

During deliberations, the jury twice sought clarifications of the court's instructions. First, the jury asked whether it had to believe that the defendant himself threatened Lewis with a gun or whether the earlier display of a gun would be sufficient to sustain a charge of robbery in the first degree. In response, the court reread the charge it had given earlier on the crime of robbery in the first degree.[4] Thereafter, the jury requested the court to further define the word "course" in the definition of the offense of robbery in the first degree so as to learn when "in the course" of the commission of the crime begins.

The court then told the jury, "There is no legal, specifically legal, definition of 'the course of,' but I can tell you where it would fit into the statutory scheme. 'In the course of' would mean after the intent to commit the larceny has arisen and the defendant or a participant with him has taken some step in fulfillment of this intent to commit the crime. Now, if you are focusing on the time, as you put it in your question, does the course begin with the [swerving of the car]—that's [a] question of fact for you to decide, whether it fits within the intent to commit the crime at that time. Did they intend to do it and did they take some step in fulfillment of this intent to commit the crime? . . . So, obviously, you're going to have—you heard all of the evidence about when the weapon was allegedly displayed and you'll have to fit that in your own mind, taking into consideration the entire factual situation and see whether or not you feel that that display—or the evidence that you heard about the display of the gun and the different times was in the course of the commission of the crime of robbery in the first degree."

---

[4] The court told the jurors, inter alia, that "[a] person is guilty of robbery in the first degree when in the course of the commission of the crime or the immediate flight therefrom, he or another participant in the crime displays or threatens what he represents by his words or conduct to be a pistol, revolver or other firearm."

At the outset, we note that the defendant concedes this claim was not properly preserved at trial and now seeks review under the plain error doctrine embodied in Practice Book § 4185, *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). First, the defendant's claim does not rise to the level of plain error. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings . . . and results in an unreliable verdict or miscarriage of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Polanco,* 26 Conn. App. 33, 39, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991); *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.,* 219 Conn. 657, 671, 594 A.2d 958 (1991). This claim does not raise such an issue. Thus, plain error review is unwarranted.

This court and our state Supreme Court, however, have permitted *Evans-Golding* review of similar claims that certain language used in the charge in a criminal case had the effect of diluting the state's constitutional burden to prove a defendant guilty beyond a reasonable doubt. *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990); *State* v. *Harvey,* 27 Conn. App. 171, 605 A.2d 563 (1992); *State* v. *Smith,* 26 Conn. App. 279, 600 A.2d 1036 (1991). Accordingly, we review this claim to determine if the defendant has been deprived of his fundamental constitutional right not to be convicted except upon proof beyond a reasonable doubt of each element of the offense charged. *State* v. *Golding,* supra; *State* v. *Evans,* supra.

Where an alleged improper instruction is of constitutional dimension, "the test is whether it is reasonably possible that the jury was misled." *State* v. *Quintana,* 209 Conn. 34, 50, 547 A.2d 534 (1988). We do not evalu-

ate a contested portion of an instruction in artificial isolation from the overall charge. Id. Instead, we examine the charge in its entirety. *State* v. *Hopkins,* 222 Conn. 117, 130, 609 A.2d 236 (1992); *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989). While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *State* v. *Hopkins,* supra; *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991). Reversal is warranted only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Fleming,* 198 Conn. 255, 269, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

Our Supreme Court has determined that "if the use of force occurs during the continuous sequence of events surrounding the taking or attempted taking, even though some time immediately before or after, it is considered to be 'in the course of' the robbery or the attempted robbery within the meaning of the statute." *State* v. *Ghere,* supra, 297. Here, the court's first response to the jury's inquiry was a correct statement of the law. Its second response to the jury's request properly stated that "in the course of" commission of the crime would occur after "the defendant or a participant with him has taken some step in fulfillment of this intent to commit the crime." What constituted such "steps" were, as the court stated, factual issues within the jury's domain. Here, the jury reasonably and logically could have inferred that both the brandishing of the gun in the car, and the defendant's act of bringing it to his companion and asking that he step aside so that nothing would be between the gun and Lewis were acts directly connected with committing the crime of robbery in the first degree. See, e.g., id., 298 ("use of force was within the sequence of events directly con-

nected to the attempted robbery"). On the basis of our independent review, we conclude that the challenged aspect of the court's instructions, taken in the context of the entire charge, was correct in law, adapted to the issues and sufficient to guide the jury. See *Preston* v. *Keith,* supra.

## B

Finally, the defendant argues that the court improperly instructed the jury on the element of intent necessary to sustain a conviction for the crime of conspiracy to commit robbery in the first degree. Specifically, he claims that because the court's charge amounted to a "general intent" instruction, his state and federal constitutional rights were violated because he was convicted in the absence of proof beyond a reasonable doubt of one of the necessary elements of the offense charged. We disagree.

Here again, we note that the defendant concedes that this claim has not been properly preserved for review. He seeks review under the plain error doctrine embodied in Practice Book § 4185, and under *State* v. *Evans,* supra, and *State* v. *Golding,* supra. Although, the defendant's claim does not rise to the level of plain error; *State* v. *Polanco,* supra; we nevertheless afford it *Evans-Golding* review, since other, similar jury instruction claims alleging error of constitutional magnitude have been granted such review. See *State* v. *Johnson,* supra; *State* v. *Harvey,* supra; *State* v. *Smith,* supra.

When the court initially instructed the jury on the conspiracy charge, it read the information and stated, inter alia, that "[t]o constitute the crime of conspiracy, the state must prove the following elements beyond a reasonable doubt. One, there was an agreement between two or more persons to engage in conduct constituting a crime; two, there was an overt act in fur-

therance of the subject of the agreement; and three, there was the intent on the part of the defendant that conduct constituting a crime be performed." The court also told the jury that a conspiracy conviction would have to be based "on the charge contained in the information," and that in order to convict the defendant, it would have to be found that the defendant "had a specific intent to violate the law" that was the object of the conspiracy. Thereafter, the jurors asked to hear the three elements of the crime again. The court repeated the elements of conspiracy, stating, inter alia, that the state had to prove beyond a reasonable doubt that there was "the intent on the part of the defendant that conduct constituting a crime be performed."

The defendant argues that since conspiracy is a specific intent crime; *State* v. *Beccia,* supra, 4; the court's instruction was improper because it permitted the jury to find him guilty of some crime, rather than the crime that was the object of the conspiracy. Id. Again, we note that our role in reviewing jury instructions is not to dissect them critically in a microscopic search for possible error. *State* v. *Hopkins,* supra, 129. We examine them in their entirety; id., 130; *State* v. *Grullon,* supra; to determine if they are correct in law, adapted to the issues and sufficient for the guidance of the jury. *State* v. *Hopkins,* supra; *Preston* v. *Keith,* supra.

Our review of the record discloses that the jury was well informed as to what offense was the object of the conspiracy. In charging the jury, the court said that the information used to charge the defendant would be with the jurors in the deliberation room. The court read the information during its charge. It recited the three elements necessary to prove conspiracy and further told the jury that it could not find the defendant guilty unless the state proved beyond a reasonable doubt that he "had a specific intent to violate the law"

that was the object of the conspiracy. The court then reiterated that to convict the defendant, the jury had to find that there was proof beyond a reasonable doubt of the crimes alleged in the information. We therefore conclude that the court's instruction on the conspiracy charge was proper in that it stated the law correctly, adapted the issues to the case at hand and gave the jury sufficient guidance to reach a verdict. *State* v. *Hopkins,* supra; *Preston* v. *Keith,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.